USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TRUSTEES OF THE NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS PENSION FUND,
WELFARE FUND, ANNUITY FUND, and
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, TRUSTEES
OF THE NEW YORK CITY CARPENTERS RELIEF
AND CHARITY FUND, THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-MANAGEMENT
CORPORATION, and the NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS,

                    Petitioners,

         -v-

DV I, LLC,

                    Respondents.

------------------------------------------------------------X

17 Civ. 7367 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On September 27, 2017, petitioners commenced this action pursuant to § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to confirm an arbitration award (the "Award") issued against respondent DV I, LLC ("DV I"), Dkt. 1 ("Pet."). Petitioners are the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, and the New York City and Vicinity Carpenters Labor-Management Corporation (collectively, the "Funds"); and the New York City District Council of Carpenters (the "Union"). Pet. ¶¶ 4–7.

On November 27, 2017, the Court granted petitioners' request to construe their petition as a motion for summary judgment, and directed DV I to file any opposition by December 1,

1

2017. Dkt. 10. To date, DV I has neither appeared nor responded, despite being properly served. For the reasons that follow, the Court grants petitioners' motion for summary judgment.

I.   **Background**[1]

   A.   **The Parties**

As for the four groups of petitioners: First, the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Fund are "employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with [the Employee Retirement Income Security Act of 1974 ("ERISA")]." Pet. ¶ 4. These trustees are "fiduciaries of the [] funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21)." *Id.* Second, the Trustees of the New York City District Council of Carpenters Relief and Charity Fund are trustees of a charitable organization established under § 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Id.* ¶ 5. Third, the New York City and Vicinity Carpenters Labor-Management Corporation is a non-profit corporation. *Id.* ¶ 6. Fourth and finally, the Union is a "labor organization that represents employees in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of [DV I]." *Id.* ¶ 7. All petitioners are based in New York, New York. *Id.* ¶¶ 4–7.

As for the respondent: DV I is a Michigan limited liability company. *Id.* ¶ 8. At all relevant times, it was an employer within the meaning of § 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of § 501 of the LMRA, 29 U.S.C. § 142. *Id.*

---

[1] The following undisputed facts are derived from the Petition and the exhibits attached thereto.

2

### B. The Collective Bargaining Agreements

On June 13, 2014, DV I executed a Letter of Assent agreeing to be bound by a project labor agreement (the "PLA") covering construction work on a project in the Bronx. *Id.* ¶ 9. The PLA bound DV I to the collective bargaining agreement between the Union and the Building Contractors Association, Inc. (the "Association CBA"). *Id.* ¶ 10; *see id.* Ex. A, art. 2 § 4 & Schedule A. The PLA and Association CBA required DV I to remit contributions to the Funds for every hour worked by its employees on the construction project. *Id.* ¶ 13.

On July 21, 2015, DV I entered into an Independent Building Construction Agreement (the "CBA") with the Union. *Id.* ¶ 11; *see id.* Ex C; *id.* Ex. D. The same day, DV I also executed an Extension & Compliance Agreement (the "CBA Extension"), effective July 1, 2015, which extended the terms of the CBA to the present. *Id.* ¶ 12; *see id.* Ex. E. The CBA requires DV I to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union. *Id.* ¶ 14.

To ensure compliance with these contribution requirements, the CBAs require DV I to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit. *Id.* ¶ 15. To that end, the Association CBA, the CBA, and the PLA bind DV I to the Funds' Collection Policy, which states that "[i]n the event that an employer refuses to permit a payroll review and/or audit upon request . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." *Id.* ¶¶ 16–17; *id.* Ex. F, § IV(12).

The CBAs provide further that in the event of a "dispute or disagreement" between the parties "concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator." *Id.* ¶ 18; *id.* Ex. B, art. XVI § 7; Ex. C, art. XV § 7. The arbitrator's award "shall be final and binding upon the parties . . . and shall be wholly enforceable in any court of competent jurisdiction." *Id.* Ex. B, art. XVI § 7; Ex. C, art. XII § 2. The CBAs further provide that, in the event a court renders judgment in favor of the Funds, the employer "shall pay to [the Funds], in accordance with the judgment of the court," the amount of the unpaid contributions plus interest, plus an amount equal to the greater of the interest charges or liquidated damages of 20% of the amount of the unpaid contributions, reasonable attorney's fees and costs, and other relief the court deems appropriate. *Id.* ¶ 20.

### C. The Underlying Dispute and Arbitration Award

Pursuant to the CBAs, petitioners requested an audit of the period covering June 16, 2014 through the present. *Id.* ¶ 20. DV I failed to permit the audit. *Id.*

On April 20, 2017, petitioners initiated arbitration before the designated arbitrator, Roger E. Maher. *Id.* ¶ 21; *see id.* Ex. H at 1 (the "Award"). On April 27, 2017, the arbitrator sent DV I notice of a July 14, 2017 hearing date by regular and certified mail. *Id.* ¶ 21; *see id.* Ex. G.

On July 14, 2017, Maher presided over a hearing. *Id.* ¶ 22; Award at 1–2. Petitioners' counsel appeared, but DV I's counsel failed to appear. Award at 2. DV I also did not request an adjournment or extension of time to appear. *Id.* Accordingly, Maher found DV I in default and proceeded to take evidence on petitioners' claim. *Id.*

On July 16, 2017, Maher issued an opinion and default award. *Id.* at 3. Maher found that the uncontroverted testimony and evidence established that DV I was bound to a CBA obligating

4

it to make its books and records available for the requested audit period, and that DV I denied petitioners permission to conduct such an audit. *Id.* at 2. Maher then awarded petitioners a total of $930,208.86. *Id.* at 3. That amount comprised $720,305.32 in estimated unpaid contributions, $63,442.48 in interest, $144,061.06 in liquidated damages, $400 in court costs, $1,500 in attorneys' fees, and $500 in arbitrator's fees. *Id.* The arbitrator found further that interest would accrue at the rate of 5.75% from the date of the issuance of the Award. *Id.*

To date, DV I has failed to pay any portion of the Award. Pet. ¶ 25. Nor has DV I applied to correct, vacate, or modify the Award. *Id.* ¶ 26.

### D. This Action

On September 27, 2017, petitioners filed a petition in this Court to confirm the Award, along with attached exhibits. Dkt. 1. On the same day, petitioners also filed a memorandum of law in support. Dkt. 5. On October 21, 2017, DV I was served. *See* Dkt. 8. DV I's answer was due on November 13, 2017. *See id.*

On November 27, 2017, petitioners filed a letter requesting that the Court deem their petition an unopposed motion for summary judgment and review it as such. Dkt. 9. That day, the Court granted the request in part, agreeing to construe the petition as a motion for summary judgment, but granting DV I the opportunity to file an opposition by December 1, 2017. Dkt. 10.

To date, DV I has not filed a notice of appearance in this case or opposed the petition.

## II. Applicable Legal Standards

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattell, Inc.*, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already

5

a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). But "[a]rbitration awards are not self-enforcing." *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 63 (2d Cir. 2003), *overruled on other grounds by Hall St.*, 552 U.S. 576. Rather, "they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair*, 462 F.3d at 104.

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn Houdstermaatschappij, BV v. Standards Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). "To ensure that the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation are met, arbitration awards are subject to very limited review." *NYKcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867 (LAK) (AJP), 2010 WL 4812975, at *5 (S.D.N.Y. Nov. 24, 2010) (quotation marks omitted) (collecting Second Circuit cases). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted). Accordingly, where "there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (citing 9 U.S.C. § 9; *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a motion for summary judgment, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial . . . ."). Similarly, on an unopposed motion for confirmation of an arbitration award,

> a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material

7

issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*."

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).

### III. Discussion

#### A. Confirmation of the Arbitration Award

On the basis of the Award, and on the very limited review that is appropriate, the Court finds that summary judgment is warranted, as petitioners have shown there is no material issue of fact in dispute. Arbitrator Maher acted well within the scope of the authority granted him by the parties. *See, e.g.*, Pet. Ex. B, art. XVI § 7; Ex. C, art. XII § 2. Upon review of petitioners' uncontroverted testimony and evidence, Maher found "substantial and credible evidence" that DV I was required to permit the Funds to examine its books and records and failed to do so. Award at 2. From this, the Court concludes that there is at least a "barely colorable justification for the outcome reached." *Landy Michaels Realty Corp.*, 954 F.2d at 797 (quotation marks omitted). Accordingly, the Court confirms the Award in favor of petitioners, for a total amount of $930,208.86, plus 5.75% interest from July 16, 2017 (the date of the Award) through the date of this judgment.

#### B. Attorneys' Fees and Costs

Petitioners also seek attorneys' fees in the amount of $1,177.50 and costs in the amount of $75, both incurred in the course of bringing this action. Pet. at 7. They are entitled to attorneys' fees and costs pursuant to the CBAs. *See* Pet. Ex. B, art. XVIII § 19(c); Ex. C, art. XII § 3. Further, the Second Circuit has held that "[i]n actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has refused to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc.*

*v. Retail, Wholesale & Chain Store Emps.*, 118 F.3d 892, 898 (2d Cir. 1997) (quotation marks omitted); *see also Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) ("[C]ourts have routinely awarded attorneys['] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court.") (quoting *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases)).

Here, DV I, in violation of the CBAs, failed to produce the requested books and records for an audit. It also failed to abide by the arbitral award or to respond to plaintiffs' motion for summary judgment to confirm that award. The Court therefore finds it appropriate to award plaintiffs reasonable attorneys' fees and costs incurred in pursuing this action.

In establishing the reasonableness of a fee application, the party seeking attorneys' fees "bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The starting point for calculating a "presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)). Courts are obliged to exclude hours that are "excessive, redundant, or otherwise

unnecessary." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 434). The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community is this District. *Arbor Hill Concerned Citizens*, 522 F.3d at 190–91.

Here, petitioners seek attorneys' fees of $1,177.50, reflecting 5.1 hours of work. *See* Pet. at 7. To support their request for such fees, petitioners' counsel submitted an invoice that detailed the tasks performed and the hours worked. *See id.* Ex. I ("Invoice"). This Invoice also provides the hourly rates of the relevant individuals. Two attorneys worked on this case. One was Claire Vinyard, an associate at Virginia & Ambinder, LLP ("V&A") and a 2014 law school graduate, whose primary practice area is ERISA litigation. Pet. ¶ 30. She billed at a rate of $225 per hour for 4.7 hours worked. Invoice. The other attorney was Todd Dickerson, of counsel at V&A and a 2013 law school graduate, who regularly represents multiemployer benefit plans in ERISA litigation. Pet. ¶ 31. He billed at a rate of $300 per hour for 0.40 hours worked. Invoice. Finally, V&A billed legal assistants' time at a rate of $100 per hour, *id.* ¶ 32, but the Invoice does not list any billings for legal assistants' time.

As to Vinyard, the Court will approve the proposed rate. Courts have awarded the precise rate Vinyard seeks here, $225, for similarly situated associates. *See, e.g.*, *Trustees of N.Y. Dist. Council of Carpenters Pension Fund v. Metro. Fine Mill Work Corp.*, No. 14 Civ. 2509 (PAE), 2015 WL 2234466, at *5 (S.D.N.Y. May 12, 2015). Accordingly, this rate is reasonable in light of Vinyard's experience. *See Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Stop & Work Constr. Co.*, No. 17-CV-5693 (JGK), 2018 WL 324267, at *3 (Jan. 4, 2018).

Likewise, the Court will approve Dickerson's proposed rate. Although Dickerson has only one more year of experience than Vinyard and less than five years of experience total, Dickerson "effectively serve[d] as lead counsel" in this matter. *Lee v. Santiago*, No. 12-CV-2558 (PAE) (DF), 2013 WL 4830951, at *8 (S.D.N.Y. Sept. 10, 2013). And in fact, just two weeks ago, one of this Court's colleagues awarded Dickerson $300 in fees in a similar matter. *See Stop & Work Constr.*, 2018 WL 324267, at *3. Accordingly, the Court deems Dickerson's requested rate reasonable as well.

"As for the number of hours expended, courts uphold fee requests in ERISA cases when they determine that such fees are 'reasonable.'" *Finkel v. Jones Lang LaSalle Am., Inc.*, No. 08 Civ. 2333 (RRM) (RML), 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009); *see also McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). The Court has reviewed the Invoice provided by petitioners' counsel, and it reflects sound billing practices: It is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort. Accordingly, the Court finds the hours that counsel expended reasonable.

The Court therefore grants petitioners' counsel attorneys' fees in the amount of $1,177.50.

Petitioners also seek to recover $75 in costs. Courts in this Circuit will generally grant "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). Although petitioners have not provided an accounting of their costs, they are minimal and in line with costs awarded in comparable proceedings. *See, e.g., Stop & Work Constr.*, 2018 WL 324267, at *3.

The Court therefore finds them reasonable and awards petitioners costs in the amount of $75. Accordingly, the Court awards fees and costs totaling $1,252.50.

### C. Post-Judgment Interest

Petitioners also seek post-judgment interest. Pet. at 7. Such interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). An order confirming an arbitration award is to be "docketed as if it was rendered in an action," and "have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Accordingly, § 1961 applies to actions to confirm arbitration. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration case). The Court therefore also awards interest to accrue from the date judgment is entered until payment is made.

## CONCLUSION

For the reasons stated above, the Court confirms the Award in favor of petitioners and issues judgment in the amount of $930,208.86, plus pre-judgment interest at a rate of 5.75% and post-judgment interest pursuant to 28 U.S.C. § 1961(a). Further, the Court awards attorneys' fees and costs associated with this confirmation proceeding in the amount of $1,252.50

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 18, 2018
       New York, New York